Case number 20-1306, Securities Industry and Financial Markets Association, Petitioner v. Securities and Exchange Commission. Ms. Levine for the Petitioner, Mr. Wyman for the Respondent. May it please the Court, Sarah Levine for the Petitioner Systema. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. This case involves the SEC's to circumvent the APA by promulgating purportedly temporary but indefinitely extendable substantive regulatory change without using notice and comment. In order of issue here, the SEC exempted municipal advisors from a statutory requirement to register as broker-dealers. Unsurprisingly, given the lack of opportunity for public comment, the SEC's rationale for the 2020 exemption was arbitrary and capricious and unsupported by substantial evidence. The SEC has tried to shift the focus to disability. Could I ask you to begin with the government's argument that the case is moot? Absolutely, Your Honor. This case is not moot for several reasons. First, it's capable of repetition but evading review. And we know the standards the circuit has set out is that there's a reasonable expectation of the same complaining party will be subject to the same actions and that the challenge actions is too short in duration to be fully litigated. And here we more than meet that standard. The SEC has already twice taken action to arbitrarily distinguish between municipal advisors and broker-dealers, first in its proposed rule in 2019 and then again in the 2020 action at issue here. In the most recent agency action, the commission explicitly asserted its complete discretion to extend this action as it deems appropriate, essentially unfettered discretion. This circuit has held that an agency's refusal to admit the illegality of its- Ms. Lameen, excuse me. Even if it were, even if we were to think that this was capable of repetition, which I'm not certain about, what evidence is there that it would evade review? Because in this instance, the agency did a temporary order, but previously it was thinking about doing a permanent order. A permanent order certainly wouldn't evade review because once it went into effect, it could be challenged in due course. So I mean, what evidence is there that the agency would do this in a temporary manner again? Yes, Your Honor. So the circuit has held and the Supreme Court has recognized that for the purposes of this standard, it's less than two years to be fully litigated to the Supreme Court. And here, let's take the procedural violation, the APA, which we think violates the strict language of the statute. The fact that they issued this order, which constitutes a rule under the APA without notice and comment. This circuit has previously held that this same posture, a rule issued without notice and comment is capable of repetition, but evading review in the this is quite a clear, stark violation, right? The plain reading of the statute, 5 U.S.C. 51, tells us that rules are future oriented, right? A rule means the whole or part of an agency statement of general particular applicability and future effect. So Congress has defined a rule as something that has exclusively future effects. That's what this purported order did here. And we generally only have future effects and adjudications immediately by bind parties by retroactively applying. And the judge pointed to Justice Scalia's concurrence in Bowen versus Georgetown University Hospital, stating that the central distinction between a rulemaking adjudication is that rules have legal consequences only for the future, which is what this exemption did. So they started an order, but it actually qualifies as a rule under APA, and they issued it without notice and comment. And they've taken the position that that's fully appropriate, that that's available to them, that that's effective, and that that's fully legal. So we take them at their word. They have said that they have full discretion to initiate this type of what they term an order repeatedly. And this circuit in, for example, in prior cases, has said that the litigating position is a factor that needs to be considered for capable of repetition, but evading with abuse. This is Inouye Center Auto Safety. Yes, Your Honor? Ms. Levine, I guess I'm not sure that that response goes to the question of why we think the agency would do a temporary order again. You know, even if they chose to act by order, it's not clear that they would choose to act again by temporary order. And so therefore, there's not, you know, what's the evidence that it's, you know, that it would evade review? Maybe it's capable of repetition, because they've said, we can act by order instead of rule. But the idea that it would evade review, I'm just not sure what evidence there is for that. Yes, Your Honor, of course, the circuit has held that a litigant doesn't need to show that the challenge action will always be less than two years. And that's Washington Post versus Robinson, where the press sought field plea arguments. So the standard that we need to make meet is, is there a reasonable expectation that the agency will do this again? And Your Honor, I point to the facts here. Initially, as we know, in 2019, the commission proposed what has been a final rule. But instead of implementing that, look to their own choice that they made, they could have completed that rulemaking. Notice and comment had been pending, they could have completed that action. But Judge Rao, what they chose to do instead was issue a six-month APA rule, which they styled as an order. And their past conduct is what gives us the factual basis to have every reasonable expectation, which is the standard. And we point also to Joe V. Sullivan, this court's decision, which said there just needs to be some likelihood that it will occur. And that was a case where a soldier had brought an APA challenge related to a period of time when Desert Storm, the military action was in effect. And it essentially faced an argument that the war had ended, Desert Storm was over, there wasn't that loop. And in that case, the circuit explained that some likelihood of recurrence is enough. And we've seen other instances, for example, Safari Club versus Zinke, where the agency that issued the Department of Interior actually didn't even take any steps. It was a change in policy that would have affected import licenses for elephant trophies. And in that instance, the circuit recognized it as capable of repetition but evading review. So although from a distance, I think it's easy to say, well, how do we know what the FTE is going to do? We look closely at the facts here in terms of what they have done, and what the standard is that the circuit has defined in repeated precedence. And we think we more than meet that standard. We would point also, Your Honor, to the voluntary cessation argument, which is another pathway for this court to find that this is not moot. And although the facts are a bit unusual, again, we think a close reading of this circuit's precedent does show that we qualify under that mootness exception as well. Here, the SEC elected not to extend the expiration date of the exemption after the litigation began. And this involuntary cessation, because the SEC expressly retained the unrestricted discretion to extend exemption, did seem appropriate and identified no practical barriers to extension. And again, here, this is an instance where the SEC took an action predicated on a market disruption. That's the very sort of first theme and issue that the agency defines in the order, which is the full extent of the administrative record here. And yet, the agency itself did not discuss or address or reference any market data. Here, the SEC is the primary market regulator for municipal securities. The MSRB, which is an SRO, a self-regulating organization under the authority of the SEC, provides that data. It's publicly available intermittently. And yet, the SEC went forward and took this action, distinguishing arbitrarily between municipal advisors and the most core data to that marketplace. If the decision to extend the deadline is in the agency's sole discretion, as they asserted in the face of the order when they said they'll do so as they deem appropriate, if it doesn't count as voluntary cessation, it would give agencies and other private parties really an end run around the very purpose of the voluntary cessation standard. An agency could issue an action, set a deadline, say it's extendable, as they see fit. If litigation is pending, they could weigh that as a factor in choosing whether to extend or not, which is in itself the core of all. What about the presumption of regularity for public officers that our precedents suggest we must uphold? Yes, Your Honor. Our position is consistent with that, as the commission has said, that what they've done here they view as regular order. They see it as regular order. It's within their core authority to issue, again, what they style as an order, despite the definition in the APA statute that something that is prospective entirely is, in fact, a rule, do so without notice and comment, and that they have every discretion to do so, again, without, again, addressing any market data as they did here. So we take them at their word. Judge Rao, Judge Walker, any other questions? Not for me. Thank you. Okay. Thank you, Ms. Levine. We'll hear from the government. May it please the Court. My name is Theodore Wyman, and I represent the Securities and Exchange Commission. The petition for review should be denied for several reasons, but the jurisdictional effectual relief that this Court can provide. The order is no longer in effect. The exemption is no longer impacting anyone. And the results SIFMA seeks here is already the status quo. SIFMA argues that there is a reasonable expectation that this will recur because it says that the commission has twice taken action in this arena. One of those examples is simply the action challenged here. And the other one, the commission did not act. It put out a proposal. It sought notice and comment. And then it said expressly that it was declining to act on it at that time. And that hasn't changed as of today. So it's really one instance, the very one under review, that is their example of what the commission might do in the future. Can you help me think through how to define the challenged action with regard to capable of repetition yet evading review, and in particular, the first prong of that, capable of repetition. We could define the challenged action here as an order that grants an exemption regarding broker-dealer requirements. Or we could define the challenged action as a temporary order regarding broker-dealer requirements. How am I supposed to choose? Well, Your Honor, I would look to the statute itself. We cited a case in the brief where there was a licensing statute that said the license can only be one year. So it was inherent in the actual action that it could be no longer than a year. Here, the commission didn't issue an emergency order. In fact, SIFMA points out very clearly that we don't rely on some sort of process that is inherently time-limited. The commission acted under a provision that allows any actions of various lengths of time. So in this case, SIFMA, I think, would have to show that the inherent challenge here, the inherent action that was taken, excuse me, that the action taken would inherently be of a short length or is typical. If SIFMA could show that this is something that really just by the matter of practices, the commission just does this and uses a statute in a particular way, perhaps that could satisfy that. But here, there's absolutely no such showing. Is that sort of, is that kind of, well, tell me if I'm rephrasing your answer in an accurate way. If this had happened five times, 10 times, 15 times, if there had been a temporary order regarding these broker-dealer, an exemption from these broker-dealer requirements, if there had been a temporary order five, 10, 15 times, then we would think of the challenged action that may or may not be capable of repetition as a temporary order. But because this temporary order was the only temporary order of its kind and the statute that allows it also allows non-temporary orders that would not be, you know, would not evade review, we should think of this as the latter. We should think of this as an order granting exemption, not a temporary order granting an exemption. I think that this court in its reasonable analysis can make that kind of distinction on the facts of a case. What we know is that this wasn't inherently a practice that would necessarily evade review. And the commission, there's no demonstrated probability in the past that this has happened. So I think that is something that is a dividing line that would work. And I think I'm with you, but I just, you've used the word inherently a few times. So, and I'm trying to figure out what is inherent, what makes something inherently temporary or a temporary order a year from now granting this same exemption? At that point, would you concede that this is a challenged action regarding a temporary order that is capable of repetition yet evading review? I think at that point, there would be certainly an argument on the other side. I don't know that it would be dispositive with two times. I think it would be fact specific. And of course the question then would be, is it recurring? Because the touchstone is, what is being raised in this argument by SFMA? It's challenging the specifics of the order. A year from now, there's no indication that even if they were to show that the commission would issue another temporary exemption, that it would be susceptible to the challenges that it raises here. It's very fact specific as to the market in 2020. Well, so there I'm somewhat on board and somewhat not on board. I mean, I have a prediction. At some time in the near future, municipalities will be short on money. And after that happens, at some time in the future after that, they'll be short on money again. So I don't think the test can be, are the conditions that led to this likely to arise again? They seem almost, it may not be pandemic related, but they seem almost certain to arise again. Well, I think that question would go to what is being raised in that particular case. If, for example, SFMA were challenging the ability of the commission to act in this space, deal with municipalities in this way, then perhaps that would be sort of a recurring set of factual conditions. But this is a very specific order addressing narrow circumstances. And I think there has to be some indication that an opinion by this court would be useful in resolving any sort of recurrence that is reasonable, because otherwise it would simply be an advisory opinion. And I think that is a fact specific question. And in some cases, it is reasonable to think that an order might happen again. Maybe there's some sort of issue that's specific, but that issue could arise over and over again. And that would depend on whether the commission didn't consider news articles in May of 2020. They're arguing that certain conditions, certain restrictions that were in this specific order, but not in the 2019 order. So we've already have a departure in terms of the restrictions that SFMA challenges, that those specific terms would occur again. So I think we're far afield from the situation in which this is reasonably likely to recur in such a way that if this court were to rule on the commission's analysis or whatever, with respect to this particular exemption, that it would really be useful in a year from now. Obviously, the circumstances of the initial financial issues following the COVID crisis with the shock budgetary impacts and sort of the things that guided this order, there's simply no evidence in the record that this is something that is circumstances. And I think, you know, aside from the mootness question, I think standing is another significant jurisdictional defect. And it's one of really a proof in this case. I think it's important to recognize that SFMA offers no specific evidence as to its members. It offers no member declarations, just saying we act in this space when municipal advisors run up against this issue where they can't go any further, they bring brokers in to do this. It would be very simple. And SFMA has unique access to this information from its members. And SFMA doesn't even address the specific circumstances. They treat this as municipal advisors are allowed to compete generally with brokers. But that's just not the case. Brokers can handle money, they can serve as intermediaries, handle securities, find issuers. There's all sorts of services brokers provide. Municipal advisors weren't able to do any of that. They're able to do one thing under the rule, solicit banks in the specific context of these transactions under $20 million and with restrictions on them that brokers wouldn't be subject to in any sort of competition. So they had to show that municipal advisors who are representing their municipal issuer customers, they're getting bank financing, they're seeking loans, they're advising. And then, you know, in this crisis to get more efficiency, more flexibility in that process, the exemption allowed them to not worry about whether the security was going to be structured instead of a loan as a security. And so the real question is, in that circumstance, would brokers be brought in? It's not by the nature of the order. So there's no regulation requiring a broker to be brought in and municipal advisors can make that communication themselves. Or the structure can simply be structured as a loan. And those are the kind inefficiencies that the exemption was designed to lift. It was designed to make that process more efficient. It wasn't designed to allow municipal advisors to go out and get more work that brokers would get. And again, it's certainly possible that this sprung more widely or it affected brokers, but all required is a declaration or two from SIFMA members just saying we act in this specific space and this affected us. And two rounds of briefing with the motion to dismiss and they've been unable to come up with any sort of specific argument on this. And I think that's telling on standing. I think the court has no further questions. The brief and the commission's brief adequately addresses the remaining issues. Thank you. Thank you. Ms. Levine, you were out of time, but you can have a minute. Yes, Your Honor. There's no doctrine of one is not enough incapable of repetition by the evading review. There are multiple cases, Del Monte, single denial of a license, Rawls Court versus Siphius. There was nothing pending. Safari Club versus Jewel, where there was even not one denial of an import request. And the court still found capable of repetition by the evading review. As Judge Walker predicted, we all know that the municipal markets may face a situation like this. They also, the stated reason by the commission was COVID and the pandemic continues. But I would urge the court to separate out to two claims. Substantive APA claims and the procedural APA claims. The procedural APA claims, it violates the statutory text. The APA defines a rule as something with future effect. Judge Edwards, speaking for the court in Safari Club versus Zinke, clearly defined an order is retroactive. It can also have future effects. But something, an action by the agency, which is entirely perspective is a rule. They took this action without notice and comment. They pointed in their own brief to multiple orders where they had done that also without notice and comment. There's every reason to think that there's a reasonable expectation that they will take this action again. And finally, I would just note that this order remains, it does have continuing effects. Pursuant to the order, any municipal securities that were issued under its guise cannot be transferred to retail investors or publicly for a full year. So that continues to restrict transfer of the securities that issued through December 31st, 2021. That's an ongoing, non-ongoing. And fundamentally, the commission created a two-tiered regulatory regime where broker dealers had to comply with substantial regulations. Yes, Your Honor? Was that last argument an argument that was in your briefing? Yes, it is. Yes, it is, Your Honor. Yes, it is. And it's ongoing. It continues. There are securities out in the public marketplace that cannot be transferred because the order remained in effect pursuant to its own term. Thank you. Ms. Levine, Mr. Wyman, thank you both. The case is submitted.
judges: Tatel, Rao, Walker